J-A26034-22

2022 PA Super 217

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY H. HAAHS | : | |
| | : | |
| Appellant | : | No. 2358 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 15, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0004611-2019

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                    **FILED DECEMBER 19, 2022**

Timothy H. Haahs (Haahs) appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County (trial court) after his bench trial conviction for indecent assault without consent under 18 Pa.C.S. § 3126(a)(1). At trial, the Commonwealth presented evidence that Haahs inserted his fingers inside the complainant's mouth and touched her teeth and tongue, as well as placing his lips and tongue all over her mouth. On appeal, he contends that this was insufficient to prove that he had "indecent contact" with the complainant because the lips and mouth are not "sexual or other intimate parts" of the body for purposes of indecent assault.

Recently, though, in **Commonwealth v. Gamby**, 283 A.3d 298 (Pa. filed September 29, 2022), our Supreme Court held that, for purposes of

_____

[*] Retired Senior Judge assigned to the Superior Court.

indecent assault, "sexual or other intimate parts" is not limited to only sexual body parts, but includes "a body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and on which is commonly associated with sexual relations or intimacy." *Id*. at 313-14. Applying these criteria to the facts here, we find there was sufficient evidence for the trial court to convict Haahs of indecent assault without consent. We affirm.

**I.**

The trial court summarized the evidence at the bench trial as follows:

> On the morning of Saturday, April 20, 2019, [the complainant, M.K.] stopped into her office at Tim Haahs & Associates, at the request of a fellow work colleague to retrieve a bread knife for a baby shower [that her] co-workers were hosting. [Haahs] is the founder and CEO of Tim Haahs & Associates, and the founder and lead pastor at Calvary Vision Church, which is located next to his company.

> By way of background, [M.K.] first became acquainted with [Haahs] through a friendship with his daughter, years prior attending monthly prayer meetings at [Haahs]'s church. In 2014, [M.K.] began working at [Haahs]'s company as a part-time administrative assistant, and at the time of the underlying incident, she had worked her way up the ranks, and was working as a special project coordinator. [M.K.] described her current role, as a position [Haahs] created for her so that she could work more closely with him, requiring her to travel and attend business meetings with [Haahs] such that she frequently found herself alone with [Haahs]. At trial, [M.K.] elaborated:

> > [T]his would happen pretty often, but it was one of the car rides when [Haahs] was driving … he drove and I was in the passenger seat and he would reach over and kind of hold my hand, sometimes rub my knee or pat my knee, and he would look over and say, you know, this okay, right? Or is this okay?

> And he would -- and I would always feel very uncomfortable. This had happened so often and frequently that even though every time I would mention I felt uncomfortable, he would usually say something along the lines of, well, you know, I hope you know that I do this because you need to get comfortable with touch, you know, and my touch is -- you know, one of my love languages is physical touch and I don't mean any harm by it.
>
> So he would frequently use this narrative to either I think kind of make me feel like he was touching me in an appropriate way or so, but I still would always feel very uncomfortable and every time I mention I would feel uncomfortable he would always bring the conversation back to, well, you need to get used to being touched because what are you going to do when you get married or try and have a boyfriend.

Upon entering the office building that Saturday morning, [M.K.] noticed a light on in [Haahs]'s office, and went to greet him. After entering his office, the two shared a hug, as they occasionally would, and shared some small talk, before [Haahs] grabbed [M.K.]'s hand and asked her how she was doing in light of some personal matters in which [M.K.] had recently been involved. Taking [M.K.'s] hand, [Haahs] asked if he could pray for her and her family. Leading her to the nearby couch in his office, [Haahs] and [M.K.] sat down next to each other. [Haahs] hugged [M.K.], holding her close in this manner for the entire time that he prayed for her. [M.K.] recalled at trial that this was the first time [Haahs] had ever hugged her in such manner, hugging her so tightly that she grew uncomfortable. After he concluded praying, [Haahs] stopped hugging [M.K.], but keeping his left arm wrapped behind her, then asked her if he could hug her again at which point, he raised his left arm up and around her neck and shoulders, and as described by [M.K.] "strong armed" her so that she could not pull away. At that point, using his right hand, [Haahs] rubbed his finger over her lips, and despite her trying to move her face away, he shoved his fingers in her mouth. As he did so, [Haahs]'s finger touched her teeth and tongue. At that point, holding her face in a firm grasp to prevent her from pulling away, [Haahs] "slathered" his lips and tongue all over [M.K.]'s closed mouth. When [Haahs] finally released [M.K.] from his grasp, she immediately told him that he had made her feel uncomfortable, and that it was

> traumatic to which [Haahs] responded by holding his finger to his lips and saying "let's just not tell anybody about this."

Trial Court Opinion, 2/22/22, at 1-3 (footnotes omitted).

After being charged with indecent assault, Haahs eventually proceeded to a one-day bench trial in December 2020. At the end of trial, the trial court found him guilty of indecent assault without consent and later sentenced him to one year of probation.[1] Haahs then filed a post-sentence motion challenging the sufficiency of the evidence for his conviction. After that motion was denied, Haahs filed this appeal. On appeal, his sole contention is that the evidence adduced at trial was insufficient as a matter of law to establish that he had "indecent contact" with the complainant because he never touched a "sexual or other intimate part" of her body.[2]

---

[1] Indecent assault without consent is a Tier I offense under the Sexual Offenders Registration and Notification Act. *See* 42 Pa.C.S. § 9799.14(b)(6). Because that offense requires a 15-year registration period under 42 Pa.C.S. § 9799.15(a)(1), the trial court informed Haahs at sentencing that he would need to register as a sex offender. *See* N.T., 9/15/22, at 48-50.

[2] Our standard of review for sufficiency challenges is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

**II.**

Section 3126 of the Crimes Code defines indecent assault without consent as follows:

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent.

18 Pa.C.S. § 3126(a)(1).  "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person."  18 Pa.C.S. § 3101.

Haahs focuses his sufficiency challenge on the meaning of "sexual or other intimate parts" in the definition for "indecent contact."  While this phrase is not statutorily defined, this Court has not limited its meaning to a person's genitalia, buttocks or breasts for indecent assault.  In fact, we have often held

---

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered.  Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Williams***, 255 A.3d 565, 578-79 (Pa. Super. 2021) (citation omitted).

that the kissing of a complainant's mouth may establish the "indecent contact" element for indecent assault. For instance, in **Commonwealth v. Evans**, 901 A.2d 528 (Pa. Super. 2006), this Court held that "the act of wrapping one's arms around another person and inserting one's tongue into another's mouth clearly involves the touching of an intimate part of that person." **Id**. at 533. **See also Commonwealth v. Provenzano**, 50 A.3d 148, 153 (Pa. Super. 2012) (finding sufficient evidence to convict under § 3126(a)(1) where defendant was seen "French kissing" a mentally challenged minor); **Commonwealth v. Capo**, 727 A.2d 1126 (Pa. Super. 1999) (finding sufficient evidence for indecent assault where defendant grabbed minor by the arm and attempted to kiss her on the mouth but reached only her face and neck).

While this appeal was pending, our Supreme Court decided **Gamby** and addressed what body parts constitute "sexual or other intimate parts" for "indecent contact." In **Gamby**, the appellant was charged with indecent assault under 18 Pa.C.S. § 3126(a)(1) after he grabbed the victim and kissed her on the back of her neck. At trial, he argued that he never touched an "intimate part" of the victim's body but the jury found him guilty. After we affirmed his conviction on appeal,[3] our Supreme Court granted allocatur to

---

[3] **See Commonwealth v. Gamby**, 1813 MDA 2019, 2021 WL 99749 (Pa. Super. filed January 12, 2021) (unpublished memorandum).

consider "whether the kissing of the victim's neck, without the victim's consent, constituted the touching of the 'sexual or other intimate parts' of the victim sufficient to sustain Appellant's conviction for indecent assault under 18 Pa.C.S. § 3126(a)(1)." **Gamby**, 283 A.3d at 304.

Holding that "sexual or other intimate parts" includes a victim's neck for purposes of indecent assault, the **Gamby** Court first observed that the phrase "sexual or other intimate parts" was not rendered ambiguous simply because the Crimes Code did not define the phrase; instead, our courts have often examined dictionary definitions to determine the legislative meaning of words and phrases. **Id**. at 307. Using this approach, the Court noted that most dictionaries have "consistently and broadly defined the adjective 'intimate' to mean something that is personal and private in nature, commonly associated with sexual relations." **Id**. As a result, the Court defined "intimate" as meaning "private and personal, often sexual in nature," and added that this meaning fit the term "particularly comfortably in the context of the statute when read as a whole." **Id**. at 308 (citations omitted).

The Court then turned to the meaning of "intimate parts." Noting that the phrase was a component of the phrase "sexual or other intimate parts of the person," it found that "intimate parts"

> are clearly more than "sexual parts," and so cannot solely relate to the genitalia, as such a construction would ignore the manifest distinction between "sexual" and "other intimate parts," and would make the latter term superfluous. By including the words "or other," the legislature made clear that "sexual" is a subset of the category of "intimate parts" – that is, "intimate" is broader than

- 7 -

"sexual." Therefore, we reject Appellant's suggestion that "intimate parts" can be cabined solely to the sexual body parts, as the statute, by its very terms, is more broadly applicable. Conversely, we also reject the Commonwealth's suggestion that the phrase "sexual or other intimate parts" constitutes *any* body part, as the qualifiers "sexual" and "intimate" plainly narrow the focus. In that regard, the statute's reference to sexual and other intimate parts refers to areas of the person that implicate sexual autonomy, rather than offensive touch generally, which would be the subject of a mere battery.

*Id*. (emphasis in original).

The Court then shifted its focus to the Model Penal Code (MPC) since Pennsylvania's statute for indecent assault derived from the offense of "Sexual Assault" under Section 213.4 of the MPC. The appellant highlighted that the MPC drafters' commentary warned that the offense should not criminalize mere familial contacts or affections, but require "some more demonstrative act, such as fondling of a woman's breast, manipulation of male genitals, or digital penetration of vagina or anus." *Gamby*, 283 A.3d at 309-10 (citing MPC § 213.4, comment, n.11). The Court found, however, that these concerns were aimed on the nature of the contact rather than what body parts would be considered intimate. *Id*. at 310. As the drafters did not address the latter, the Court stated that the "MPC provides no dispositive, or even helpful, commentary on the narrow question before us." *Id*.[4]

_____

[4] The *Gamby* Court also declined to read the indecent assault statute *in pari materia* with the offense of invasion of privacy, which defines "[i]ntimate part" as "[a]ny part of: (1) the human genitals, pubic area or buttocks; and (2) the nipple of a female breast." 18 Pa.C.S. §7507.1(e). Under the offense, a

Finally, looking at how other jurisdictions have dealt with the issue, the Court observed that while some jurisdictions detail a specific list of body parts in the offenses, others (like Pennsylvania) have declined to give an inventory of what body parts are considered "intimate." That our General Assembly has opted not to do so, the Court explained, did not render the phrase "sexual or other intimate parts" ambiguous.

> The legislature may articulate prohibited conduct in broad terms even in the criminal context, within constitutional boundaries. Even though some states have legislated a definitive list of body parts, our legislature was free to use broader language, and it remains our duty to interpret "other intimate parts" in accord with its common and approved usage, and its fair import. *See* 1 Pa.C.S. § 1903; 18 Pa.C.S. § 105.

***Gamby***, 283 A.3d at 313.

Having thus found the phrase unambiguous, the ***Gamby*** Court held that "sexual or other intimate parts," rather than being limited to a sexual body part, included any "body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person

---

person is prohibited from photographing or videotaping the "intimate parts," whether or not covered by clothing, "of another person without that person's knowledge and consent and which intimate parts that person does not intend to be visible by normal public observation." ***Id***. § 7507.1(a)(2). Finding the two offenses differed qualitatively, the Court emphasized that indecent assault prohibits the touching of an intimate part while invasion of privacy prohibits the recording or photographing of intimate parts. As a result, the offenses did not "relate to the same class of persons or conduct." ***Gamby***, 283 A.3d at 311. In his initial brief, Haahs urged us to read Sections 3126 and 7507.1 *in pari materia*, **see** Brief for Haahs at 19, but does not reassert his argument in his supplemental brief field after ***Gamby*** was decided.

has a close personal relationship, and one which is commonly associated with sexual relations or intimacy." *Id*. at 313-14. In clarifying that this definition contains "four required aspects" that are not disjunctive, the Court stated its belief that its formulation for what constitutes a "sexual or other intimate part" applies only to "a limited number of parts of the body for which all four criteria are satisfied." *Id*. at 316.

Applying its definition to the facts of the case, the *Gamby* Court had little difficulty in concluding that the victim's neck was an intimate part of the body for purposes of the definition of "indecent contact," explaining:

> We find that, in ordinary social interaction, the neck is a personal and private body part. Similarly, we find that an adult does not usually touch or kiss the neck of another adult outside of personal or intimate relationships. Finally, we observe that a person's neck is routinely associated with sexual relations or intimacy. Indeed, we note that the term "necking," while broadly meaning "the act or practice of kissing and caressing amorously," is, as its name suggests, also specifically identified with the sexual kissing of the neck. Thus, we hold that the neck is an intimate body part for purposes of Section 3126.

*Id*. at 314 (internal citation omitted).

### III.

Despite the Court's decision in *Gamby*, Haahs contends that the body parts that he touched in this case—the lips and outer surface of the complainant's teeth—are not "intimate parts."[5] Focusing on the criteria set

_____

[5] Because *Gamby* was decided while this appeal was pending, this Court granted a request by Haahs for supplemental briefing to address the

forth above, he argues that a person's lips and teeth are not "personal and private" because they are common for speech and expressing emotion. This differs, he argues, from a person's neck, which has no "public-facing social function." He also notes that the lips and mouth are usually left visible to the public with no concealment except when they are covered by a mask or scarf, in which case the reasons are for public health or warmth rather than privacy.

Next, Haahs contends that the lips and teeth are not body parts that a person "ordinarily allows to be touched only by people with whom the person has a close personal relationship." For support, he notes that a person's lips are often touched by relatives, friends and colleagues as a friendly kiss or greeting; other times, a person's lips may be touched with a finger to suggest silence or exchange a "kiss of peace." According to him, a person's lips and mouth are not necessarily body parts touched only by a person with whom he or she has a "close personal relationship," such as a spouse, friend, lover or family member.

As for the last aspect, he asserts that the lips and teeth are not "commonly associated with sexual relations or intimacy." While conceding that "kissing is often an expression of affection or love between intimates or even a part of dating, flirting or sexual foreplay," that the lips and mouth may

---

sufficiency of the evidence for his conviction, given the newly announced controlling criteria for determining what constitutes an "intimate part" of the body for purposes of indecent assault.

be used in acts of intimacy does not mean that is the sort of activity with which they are often associated. Instead, he argues, it is the interior of the mouth that is most closely associated with "sexual relations or intimacy."

Last, despite the *Gamby* Court's statement that the MPC commentary was inapplicable to its determination of what constitutes an "intimate part," Haahs urges us to consider the commentary's warning that the MPC offense of "Sexual Assault," which served as the basis for our indecent assault statute, was not intended to criminalize cases such as an "elderly gentlemen who kisses a pretty girl or pats her on the bottom." According to him, while this example was not appropriate to the facts in *Gamby*, it is appropriate here because he kissed the complainant on her lips rather than her neck.

## IV.

Applying the criteria set forth in *Gamby*, we find that the lips and inner mouth of a complainant constitute an "intimate part" of the body for purposes of the definition of "indecent contact" under 18 Pa.C.S. § 3101. Indeed, if a person's neck falls under that definition as the *Gamby* Court held, it strains credulity not to also find that a person's lips and mouth constitute "intimate parts" of the body for purposes of indecent assault.

First, despite his best efforts to downplay the extent of his touching, Haahs did not merely give the complainant a kiss on the lips; he "shoved" his fingers into her mouth. *See* N.T., 12/2/20, at 106. He then touched her teeth and tongue. *Id*. at 108-09. Then, when the complainant was able to close

her mouth, Haahs "slathered" his tongue all over her lips for 15 to 30 seconds. *Id*. at 110. Rather than merely touch the complainant's lips, Haahs got past her closed mouth and inserted his finger inside her mouth and touched both her teeth and tongue. Thus, this case does not involve merely the touching of the complaint's lips but also the inside of her mouth.

With this in mind, we turn to the criteria laid out in *Gamby* for what constitutes an "intimate part," focusing first on whether the inside of a person's mouth is "personal and private." If a person's neck is "personal and private" as the *Gamby* majority held, then a person's mouth is as well, if not more so, because a person's mouth is an orifice through which something may pass into the body. That the mouth is used for communication and not typically concealed, as Haahs argues, does not diminish the common-sense conclusion that a typical person would consider the inside of their mouth "personal and private" and not subject to touching to others except intimate partners or medical professionals.

We also are unpersuaded that the inside of a person's mouth is not a part of the body for which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship. As noted, for this aspect, Haahs equates his conduct with that of a family member or close friend giving a kiss or greeting. Again, however, it strains credulity to analogize those greetings to the touching here, which involved the touching of the teeth and tongue. To the contrary, outside of receiving medical or

dental treatment from a professional to whom they have consented to the touching, people typically only let others with whom that person has a close personal relationship touch them inside their mouth.

Finally, we find that the touching of the inside of a person's mouth, like that of a person's neck, is "commonly associated with sexual relations or intimacy." In ordinary social interaction, a person allowing another to touch the inside of their mouth—whether by tongue or finger—is routinely associated with sexual relations or intimacy. Indeed, as Haahs admits in his brief, it is the tongue and interior of the mouth of the complainant—both of which he touched—that mostly relate to the oral aspects of "sexual relations or intimacy." Supplemental Brief for Haahs at 7. While he tries to argue that he did not touch those parts of the body, the complainant testified that he, in fact, touched both her teeth and tongue when he inserted his finger into her mouth. *See* N.T., 12/2/20, at 108-110. Thus, crediting the trial court's factual findings as we must under our standard of review, we find that Haahs touched the inside of the complainant's mouth, and that the inside of the mouth is a part of the body that is "one which is commonly associated with sexual relations or intimacy." *Gamby*, 283 at 313-14. In any event, her mouth was an intimate body part.

Having found that a person's mouth meets the criteria laid out by our Supreme Court in *Gamby* for what constitutes a "sexual or other intimate part" of the body for purposes of indecent assault, we find that Haahs had

"indecent contact" with the complainant in this case.    Thus, there was sufficient evidence to convict him of indecent assault without consent.[6]

Judgment of sentence affirmed.

---

[6] Haahs also raises a constitutional void-for-vagueness claim in case his sufficiency claim does not succeed, arguing this Court should address whether Pennsylvania's indecent assault statute violates the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution.  *See* Supplemental Brief for Haahs at 9.  While he preserved this challenge in his statement of errors complained of on appeal, he has never developed it in any meaningful sense at any stage of this case.  In his initial brief, he confined his argument to a single paragraph as part of his contention that "sexual or other intimate parts" should be limited to body parts like the genitals, buttocks or female breast concealed from public view and used for a sexual, reproductive or excretory function.  He argued that any definition that went beyond those body parts rendered the statute unconstitutionally vague, but offered no real argument or discussion of legal authority beyond this conclusory statement.  *See* Brief for Haahs at 25.

When he filed his initial brief, *Gamby* had not yet been decided, so Haahs could not have necessarily presaged that the Court would give "intimate part" a broader meaning than that for which he was arguing.  Yet in his supplemental brief, he fails to develop a distinct constitutional void-for-vagueness argument.    Instead, he offers a two-paragraph conclusory argument that urges this panel to consider his constitutional argument but offers no discussion of relevant legal authority.  *See* Supplemental Brief for Haahs at 9-10.  Because he has merely tacked this claim at the end of his argument rather than develop it in any meaningful fashion capable of review, the claim is waived.   *See* Pa.R.A.P. 2119(a), (b) (requiring a properly developed argument for each question presented including a discussion of and citation to authorities in appellate brief); *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (*en banc*) (stating failure to conform to the Rules of Appellate Procedure results in waiver of the issue).

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2022